[Cite as *Kolenz v. Kolenz*, 2013-Ohio-3605.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| LORI E. KOLENZ | | C.A. No. 26700 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| RONALD J. KOLENZ | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. 2010-07-1975 |

DECISION AND JOURNAL ENTRY

Dated: August 21, 2013

CARR, Judge.

{¶1} Appellant Ronald Kolenz ("Husband") appeals the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. This Court affirms.

I.

{¶2} Lori Kolenz ("Wife") filed for divorce from Husband, and Husband counterclaimed for divorce. On December 16, 2011, the domestic relations court entered a judgment decree of divorce, incorporating the terms of the parties' separation agreement therein. Pursuant to the terms of the agreement, Husband was to pay Wife spousal support in the amount of $1.00 per month, and Wife was not permitted to seek a modification of the spousal support order until June 1, 2012. The trial court expressly retained jurisdiction to address both the amount and duration of spousal support. Included in the parties' separation agreement was a provision stating that the parties understood and acknowledged that the domestic relations court "has the jurisdiction and discretion to impute income to either party for purposes of spousal

support calculation based upon the parties' prior work history." The separation agreement further contemplated a review hearing in June 2012, to further address the issue of spousal support and attorney fees.

{¶3} The domestic relations court held a review hearing in July 2012, on the issue of spousal support. On October 12, 2012, the trial court issued a judgment entry in which it found that Husband was voluntarily unemployed and imputed income to him in the amount of $60,000.00 per year. The domestic relations court ordered Husband to pay spousal support to Wife in the amount of $1375.00 per month. Husband filed a timely appeal and raises two assignments of error for review.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DETERMINED THAT APPELLANT WAS VOLUNTARILY UNEMPLOYED IN ITS JUDGMENT ENTRY OF OCTOBER 12, 2012.

{¶4} Husband argues that the domestic relations court erred by finding that he was voluntarily unemployed before imputing income to him. This Court disagrees.

{¶5} Husband presents a confusing argument in which he first argues that the trial court's finding that he was voluntarily unemployed was against the manifest weight of the evidence. He concludes, however, that this Court must conduct a de novo review of the trial court's factual findings.

{¶6} This Court concludes that the issue Husband attempts to raise is immaterial to the efficacy of the domestic relations court's spousal support order. We agree with Wife that the trial court's finding that Husband was voluntarily unemployed "was not necessary to support imputation of income to Husband for purposes of establishing a spousal support order." Rather, the propriety of the trial court's order that imputed income to him is resolved pursuant to contract

law.  It is well established that the interpretation of a contract that is clear and unambiguous is a matter of law.  *Town & Country Co-op, Inc. v. Sabol Farms, Inc.*, 9th Dist. Wayne No. 11CA0014, 2012-Ohio-4874, ¶ 15.

{¶7}    The parties entered into a separation agreement which was incorporated into the decree of divorce.  Moreover, the parties indicated their "express[] inten[t]" that they remain bound to the terms of the separation agreement upon its execution even in the event that their divorce action be dismissed.

{¶8}    By the plain language of the separation agreement, the parties agreed that the trial court would retain jurisdiction to address both the amount and duration of spousal support.  In addition, they expressly agreed that the trial court would conduct a review hearing in June 2012,[1] at which time the court "*shall recalculate spousal support* at that time based upon the parties' earnings *or potential earnings* at that time."  (Emphasis added.)  Furthermore, the parties expressly acknowledged the trial court's "jurisdiction and discretion to impute income to either party for purposes of spousal support calculation based upon the parties' prior work history." The separation agreement did not provide that the court could impute income solely upon finding that a party was voluntarily unemployed.

{¶9}    By the terms of the parties' agreement, it was unnecessary for the domestic relations court to find that Husband was voluntarily unemployed before imputing income to him for the purposes of determining spousal support.  This conclusion is bolstered by R.C. 3105.18(F)(2) which states, in relevant part: "In determining whether to modify an existing order for spousal support, the court shall consider any purpose expressed in the initial order or award and *enforce any voluntary agreement of the parties.*"  (Emphasis added.)  The parties clearly

---

[1] The review hearing was scheduled for June 11, 2012, but continued until July 17, 2012.

agreed that the trial court had the authority to impute income to the parties and need merely base that determination on the "parties' prior work history." Accordingly, the domestic relations court's finding of voluntary unemployment was mere surplusage and irrelevant to the spousal support order. The court's finding, if error, however, is harmless given the parties' agreement that the trial court retained discretion to impute income to the parties without regard to their employment status. Husband's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

> THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION WHEN IT IMPUTED INCOME OF $60,000.00 TO APPELLANT AND ORDERED HIM TO PAY SPOUSAL SUPPORT OF $1,375.00 PER MONTH.

{¶10} Husband argues that the domestic relations court abused its discretion in determining to impute the amount of $60,000.00 in annual income to Husband. In essence, Husband argues that the imputation of the sum of $60,000.00 was against the manifest weight of the evidence. This Court disagrees.

{¶11} In determining whether a finding is against the manifest weight of the evidence in a civil case, we apply the following review:

> When the manifest weight of the evidence is challenged, "[a]n appellate court conducts the same manifest weight analysis in both criminal and civil cases." *Ray v. Vansickle*, 9th Dist. Lorain Nos. 97CA006897 and 97CA006907, 1998 WL 716930 (Oct. 14, 1998). "'The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19 (1988). Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict * * * and judgment, most favorable to sustaining the trial court's verdict and judgment." *Id*.

*Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001).

{¶12} Moreover,

Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *Thompkins*, 78 Ohio St.3d at 387. Further when reversing a [judgment] on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. *Id.*

*State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the appellant and against the judgment. *Thompkins*, 78 Ohio St.3d at 387.

{¶13} We reiterate that R.C. 3105.18(F)(2) mandates that the domestic relations court "enforce any voluntary agreement of the parties" when modifying a spousal support order. The parties' separation agreement expressly provided that the trial court would recalculate spousal support after a review hearing to be scheduled approximately six months after the parties executed the agreement on December 5, 2011. Moreover, the parties expressly agreed that the trial court could impute income to the parties "based upon [their] prior work history." This comports with the statutory requirement that the domestic relations court consider "[t]he relative earning abilities of the parties" when determining the amount of spousal support. R.C. 3105.18(C)(1)(b).

{¶14} At the spousal support review hearing, Husband testified that, for thirteen years, he worked for his brother's business earning $60,000.00 per year. He testified that he and Wife decided that Husband would leave that employment and accept higher paying employment as an independent government contractor in Iraq so that the parties could pay off debt, have money for their children's college education, and secure retirement income. Husband testified that he earned $450,000.00 during the four years that he worked in Iraq. He further testified that the

first $80,000.00 to $90,000.00 in annual income from that employment was not subject to taxation.

{¶15} Husband testified that he met an American woman in Kuwait while the two were stranded in a dust storm awaiting transportation to their respective jobs in Iraq. He subsequently married the woman after his divorce from Wife was purportedly final. Husband argued that when his contract for employment in Iraq ended, he could have renewed it but he chose not to do so. Instead, he decided to follow his future wife to Germany where she had obtained employment. He testified that he was currently residing in Germany with his new wife and that he was not working. Husband testified that he had not applied for any employment in Germany, initially, because he was either not qualified for posted government positions or because of governmental hiring freezes. He testified that he could not take employment on the German economy because that would prevent him from subsequently securing government employment until he had returned to the United States for a year. He did not explain why that continued to be a barrier to his seeking employment on the German economy because he testified that he and his new wife were planning to relocate to the United States in May 2013.

{¶16} Husband testified that he did not renew his contract to work in Iraq because he did not want to continue to live in a war zone and his then-girlfriend who had relocated to Germany "was just that vehicle." He conceded that he could have returned to the United States where he maintains a home in Stow, Ohio.

{¶17} Husband testified that he received unemployment benefits after leaving his government job in Iraq. While he continued to financially maintain his home in Ohio, he did not send any money to Wife.

{¶18} A review of the record indicates that this is not the exceptional case, where the evidence weighs heavily in favor of Husband. A thorough review of the record compels this Court to conclude that the domestic relations court did not lose its way and commit a manifest miscarriage of justice in imputing a $60,000.00 annual income to Husband. Although Husband had most recently earned $450,000.00 over a four-year period before declining to renew that employment, the trial court did not impute an income commensurate with that recent income. Reasonably, such an income was reflective of the danger involved in living and working in a war zone. Instead, the court reasonably looked to the lower income Husband had been earning as an unskilled laborer in the United States in an area where he had a home and to where he might reasonably have returned. Moreover, the parties expressly agreed that the domestic relations court had the discretion to impute income "based upon the parties' prior work history." Husband's "prior work history" demonstrated that he had recently earned $60,000.00 without having to endure extreme hardships and dangers associated with living and working in a war zone. The weight of the evidence supports the trial court's determination to impute a $60,000.00 annual income to Husband for purposes of determining spousal support.

{¶19} Husband does not argue that a monthly spousal support obligation of $1375.00 under circumstances where he has a monthly income of $5000.00 and Wife has a monthly income of $1956.00 is unreasonable, and we decline to address that issue.

{¶20} Finally, this Court rejects Husband's argument that the domestic relations court was precluded from modifying the initial spousal support order of $1.00 per month pursuant to *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, because the evidence failed to demonstrate a substantial and uncontemplated change in circumstances had occurred. The *Mandelbaum* court held that "[a] trial court lacks jurisdiction to modify a prior order of spousal

support unless the decree of the court expressly reserved jurisdiction to the modification and unless the court finds (1) that a substantial change in circumstances has occurred and (2) that the change was not contemplated at the time of the original decree." *Id.* at paragraph two of the syllabus. This Court concludes that *Mandelbaum* is not applicable to the instant circumstances. The parties expressly agreed that the domestic relations court "shall" recalculate the spousal support order approximately six months after the judgment entry of divorce, thereby obviating the requirement for a substantial change in circumstances. Accordingly, the parties expressly contemplated a recalculation of support. They could have premised the recalculation on certain factors, but they did not. Therefore, Husband received the benefit of his bargain, specifically, that he would be assured of having to pay only $1.00 per month to Wife for spousal support until June 2012.

{¶21} Husband impliedly argues that the recalculation of spousal support was contingent on his selling the former marital residence in Stow or on his obtaining employment. The plain language of the parties' separation agreement belies this argument. The parties agreed that Wife was precluded from seeking a modification of the $1.00 per month spousal support order until June 1, 2012, "unless Husband sells the former marital residence, or obtains a job or other income source." After agreeing that the trial court "shall" recalculate spousal support after a hearing in June 2012, the parties again expressly agreed that "[s]aid review hearing may be held earlier in the event Husband obtains employment or sells the former marital residence." Accordingly, Husband's argument that a finding of his obtaining employment or his sale of the former marital residence was necessary to demonstrate the required substantial change in circumstances must fail.

**{¶22}** This Court clarifies that our conclusions are premised on the fact that the parties expressly agreed in their separation agreement to a recalculation of spousal support to occur approximately six months after the judgment entry of divorce. They did not address further modifications of spousal support beyond that initial review. Accordingly, future modifications of spousal support would implicate different rules of law and analysis which we decline to address here.

**{¶23}** Husband's second assignment of error is overruled.

### III.

**{¶24}** Husband's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT


MOORE, P. J.
HENSAL, J.
CONCUR.


APPEARANCES:

RONALD J. KOLENZ, Appellant.

HARVEY F. MILLER, Attorney at Law, for Appellee.